1
2
3
4
5
6

O

7

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

8
9
10
11
12
13
14

MAURO GALARZA,

    Plaintiff,

    v.

COUNTY OF SAN
BERNARDINO, *et al.,*

    Defendants.

NO.  ED CV-08-765-RHW

**ORDER GRANTING
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

15
16
17

    Before the Court is Defendants' Motion for Summary Judgment as to the Second Claim for Relief (Ct. Rec. 20).  The motion was heard without oral argument.

18

### STANDARD OF REVIEW

19
20
21
22
23
24
25
26
27
28

    Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986). The moving party had the initial burden of showing the absence of a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets it initial burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 1**

1  genuine issue for trial." *Id.* at 325; *Anderson*, 477 U.S. at 248.

2  In addition to showing that there are no questions of material fact, the

3  moving party must also show that it is entitled to judgment as a matter of law.

4  *Smith v. University of Washington Law School*, 233 F.3d 1188, 1193 (9th Cir.

5  2000). The moving party is entitled to judgment as a matter of law when the

6  non-moving party fails to make a sufficient showing on an essential element of a

7  claim on which the nonmoving party has the burden of proof. *Celotex*, 477 U.S. at

8  323.

9  When considering a motion for summary judgment, a court may neither

10  weigh the evidence nor assess credibility; instead, "the evidence of the non-movant

11  is to be believed, and all justifiable inferences are to be drawn in his favor."

12  *Anderson*, 477 U.S. at 255.

13  ## BACKGROUND FACTS

14  The following are the facts taken in the light most favorable to Plaintiff, the

15  non-moving party.

16  The individual Defendant officers, Necochea, Moore, and Herbert, learned

17  of a potential cock fight at a location in San Bernardino County.  A number of

18  units responded to the location.  A barn on the property was lit up and noise was

19  coming from it.  The three officers walked around the south sliding door while the

20  additional units approached from the north side of the bar.  As they were

21  approaching, a Hispanic male walked outside and spotted the officers.  He was

22  ordered to put his hands up, but the male turned around and ran back inside,

23  alerting those inside that the police were there.  As the officers approached,

24  approximately 100 to 150 people ran out of the north door.

25  Plaintiff proceeded to exit from the south door.  He walked outside about

26  fifteen or so feet through the back door of the barn. A bright light shone in his face.

27  Someone said, "Stop, put your hands up," and he did.  He was then hit on the head

28  with an object and he went down.  As he went down, someone continued to beat on

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 2**

1  him.  One of the officers involved in the scuffle was a tall deputy.  This deputy sat

2  on Plaintiff.  The officers handcuffed him and he was hit in the face and kicked.

3  The officers then took him inside the bar and laid him on the dirt floor.  Either

4  prior to moving him or after, someone said, "Get up, Motherfucker.  Get up, son of

5  a bitch."  Plaintiff kept telling him he could not get up.  His head was spinning, and

6  he felt very weak.  The tall officer said, "You're drunk like all these motherfucking

7  wetbacks.  Look at all the cans laying on the floor."  Plaintiff replied that he didn't

8  drink alcohol.

9       When he was moved to the barn, Plaintiff was placed near Martha

10  Rodriguez.  He was sweating and cold.  He started coughing blood.  Ms. Rodriguez

11  told the officers that Plaintiff needed medical attention.  Specifically, she said,

12  "Can you get him an ambulance because he's profoundly bleeding."  The officer

13  said, "Let the mother fucker bleed."  Plaintiff stated that the officer said, "Let the

14  motherfucking wetback choke on his own motherfucking blood the same way all

15  these motherfucking wetbacks let roosters choke on their own blood."  The tall

16  officer also stated, "I should have shot this motherfucking wetback.  I had him

17  ready.  I fucking had him."

18       Eventually, Plaintiff was treated by medical personnel.  At some point,

19  Plaintiff was Mirandized and was asked questions.  Also at some point, the EMT

20  told the officer to take Plaintiff's handcuffs off after his cap was removed and the

21  EMT noticed he had a big gash on his head.  He said something like, "He's my

22  patient now and I got to rush him to the hospital."

23       The three named-Defendants deny using any force on Plaintiff.

24       Plaintiff filed this action in June, 2008, alleging the following causes of

25  action: (1) § 1983 for violation of Fourth, Fifth, and Fourteenth Amendments

26  against individual Defendants Moore, Necochea, and Herbert; (2) § 1983 for

27  violation of Fourth, Fifth, and Fourteenth Amendments against Defendants County

28  of San Bernardino, San Bernardino County Sheriff's Department and the City of

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 3**

1   Hesperia and (3) state law claims of battery, negligent infliction of emotional

2   distress; and intentional infliction of emotional distress.

3          Defendants now move for summary judgment on Plaintiff's *Monell* claims.

4                                    **ANALYSIS**

5   **A.      Monell Liability**

6          In order to establish *Monell* liability, Plaintiff must establish that his

7   constitutional rights were violated as a result of an official policy or custom.

8   *Monell v. Dep't of Social Services*, 436 U.S. 658, 690-91 (1978).  "A municipality

9   cannot be held liable solely because it employs a tortfeasor–or in other words, a

10  municipality cannot be held liable under § 1983 on a respondeat superior theory."

11  *Id.*

12         To impose liability on a local governmental entity for failing to act to

13  prevent a deprivation of constitutional rights, a § 1983 plaintiff must establish: (1)

14  that he possessed a constitutional right of which he was deprived; (2) that the

15  municipality had a policy; (3) that this policy "amounts to deliberate indifference"

16  to the plaintiff's constitutional right; and (4) that the policy is the "moving force

17  behind the constitutional violation." *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th

18  Cir. 1992) (*quoting City of Canton v. Harris*, 489 U.S. 378, 389-91 (1989).

19         There are three ways to meet *Monell's* policy or custom requirement: (1)

20  where a city employee commits the alleged constitutional violation pursuant to a

21  formal government policy or a "longstanding practice or custom which constitutes

22  the 'standard operating procedures' of the local government entity"; (2) where the

23  individual who committed the constitutional tort was an official with "final policy-

24  making authority" and that the challenged action itself thus constituted an act of

25  official government policy; and (3) where an official with final policy-making

26  authority ratified a subordinate's unconstitutional decision or action and the basis

27  for it.  *Hopper v. City of Pasco*, 241 F.3d 1067, 1083 (9th Cir. 2001)(citations

28  omitted).

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 4**

1    Another avenue for establishing *Monell* liability is to show that the

2    constitutional violations were the result of a failure to supervise, monitor, or train,

3    where the inadequacy of the said supervision, monitoring or training amounts to a

4    deliberate indifference to the rights of persons with whom the police come into

5    contact. *Canton,* 489 U.S. at 388.

6    A plaintiff must demonstrate a "conscious" or "deliberate" choice on the part

7    of a municipality in order to prevail on a failure to train claim. *See Blankenhorn v.*

8    *City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007).  The standard is objective in that

9    it does permit a fact finder to infer "constructive" notice of the risk where it was

10   "obvious"—but this is another way of saying that there needs to be some evidence

11   that tends to show a conscious choice. *See Farmer v. Brennan*, 511 U.S. 825, 841

12   (1994) ("It would be hard to describe the *Canton* understanding of deliberate

13   indifference, permitting liability to be premised on obviousness or constructive

14   notice, as anything but objective.").

15   Thus, in order to establish a *Monell* claim for failure to train, Plaintiff must

16   show that (1) he was deprived of a constitutional right, (2) the City had a training

17   policy that " 'amounts to deliberate indifference to the [constitutional] rights of the

18   persons' with whom [its police officers] are likely to come into contact"; and (3)

19   his constitutional injury would have been avoided had the City properly trained

20   those officers. *Blankenhorn*, 485 F.3d at 484 (citation omitted).  Evidence of the

21   failure to train a single officer is insufficient to establish a municipality's deliberate

22   policy. *Id.*  "Absent evidence of a "program-wide inadequacy in training," any

23   shortfall in a single officer's training "can only be classified as negligence on the

24   part of the municipal defendant—a much lower standard of fault than deliberate

25   indifference." *Id.*

26   In support of their motion for summary judgment, Defendants submitted the

27   Declaration of Robert Fonzi, who is the Deputy Chief of the San Bernardino

28   County Sheriff's Department.  He reports that ths SBCSD adheres to the state

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 5**

1  standards for hiring and retaining peace officers that are set forth in the Peace
2  Officer Standards in Training, P.O.S.T.[1]  He reports that job offers are contingent
3  upon numerous criteria, including a background investigation which includes a
4  thorough check of an applicant's litigation history, both criminally and civilly.
5  The Sheriff's Department inquires into the military, educational and employments
6  histories of an applicant in addition to personal and professional reference checks.
7  Applicants are evaluated on approximately 15 job dimensions set forth in P.O.S.T.
8  covering areas such as communication skills, dependability, judgment and
9  integrity.  An officer must pass the P.O.S.T. training academy, which covers over
10 40 learning domains including use of force in the training academy.  An applicant
11 must also submit a comprehensive biographical package including a financial
12 breakdown, driving record and indication of past drug and alcohol use.  An
13 applicant must also pass a medical examination which can include a drug test and a
14 psychological evaluation.

15      Mr. Fonzi also reported on the training program and training materials.
16 Some of the learning domains contained within the P.O.S.T. training include: use
17 of force/lethal force, detainments; arrests; racial profiling; reporting; investigating;
18 professionalism; and ethics.  Each deputy must pass all of the learning domains in
19 order to become a deputy.  Officers must also complete mandatory continuing
20 training each year.  P.O.S.T. also mandates that all deputies be trained in courses
21 regarding cultural diversity and racial profiling.

22      Mr. Fonzi stated that the SBCSD follows specific guidelines that outline
23 when the deputies may resort to the use of force.  Specifically, deputies are
24 instructed to use "only that degree of force which is objectively reasonable to
25 protect themselves or others or to overcome resistance to their lawful authority."
26
27      [1]This is a California state agency empowered and authorized to establish the
28 minimum standards for selecting individuals for employment as peace officers.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 6**

1    Mr. Fonzi also stated that whenever the SBCSD receives a complaint that an

2 officer has used excessive force, the allegation is thoroughly investigated.

3    In responding to Defendants' motion for summary judgment, Plaintiff has

4 the burden to come forward with specific facts to support his *Monell* claims.  *See*

5 *Mattos v. Agarano*, – F.3d –,  2010 WL 92478, *2 (9th Cir. 2010).  Thus, in order to

6 be successful on his *Monell* claim, Plaintiff would have to show that an official

7 policy permitted or encouraged the constitutional violation at issue.  *See Crowe v.*

8 *County of San Diego*,  – F.3d –, 2010 WL 114956 *29 (9th Cir. 2010).  This means

9 that Plaintiff will have to show that there was an official policy or custom that

10 permitted or encouraged excessive force to be used when arresting a suspect.  He

11 has failed to do so.  Plaintiff has not presented evidence that the officers in charge

12 were not trained according to the P.O.S.T. training.[2]

13    In his response, Plaintiff focuses on the conduct of the individual officers

14 and insists that his constitutional rights were violated.  He also focuses on the

15 training or lack thereof that the Defendants received in the investigation and arrest

16 for misdemeanor violations pertaining to participating in the illegal sport of

17 cockfighting by a particular racial group and maintains that this lack of training is

18 demonstrated by the "animus" or deliberate indifference exhibited and the

19 unreasonable, unnecessary and excessive force used on the Plaintiff.  In doing so,

20 Plaintiff attempts to link the racial animus allegedly displayed by one officer to a

21 failure to train, which does not establish *Monell* liability.  *See Blankenhorn*, 485

22 F.3d at 484   Additionally, Plaintiff has failed to show how the alleged

23 constitutional violation would have been avoided if Defendants would have

24 received training on the investigation of cockfighting.  In any event, Plaintiff has

25 failed to show that the municipality was deliberately indifference to his

26 ────────────

27    [2] This could have been accomplished by asking Defendants at their
deposition whether they had or had not been trained in accordance with the POST

28 training.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 7**

1   constitutional rights.

2   Accordingly, **IT IS HEREBY ORDERED:**

3   1.    Defendants' Motion for Summary Judgment As to the Second Claim

4   for Relief (Ct. Rec. 20) is **GRANTED**.

5   **IT IS SO ORDERED.**  The District Court Executive is directed to enter this

6   order and to provide copies to counsel.

7   **DATED** this 2nd  day of February, 2010.

8

9              *s/Robert H. Whaley*
              ROBERT H. WHALEY
10             United States District Judge

11

12

13

14   C:\Temp\notesFFF692\grantsj.wpd

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 8**